[Crim. No. 1326.  First Appellate District, Division One.—September 13, 1926.]

## THE PEOPLE, Respondent, *v.* JOHN MUCHUPOFF, Appellant.

**[1] CRIMINAL LAW — BURGLARY — CONVICTION OF FELONY — QUESTIONS BY PROSECUTING ATTORNEY—ABSENCE OF ERROR.**—In a prosecution for burglary, the fact that the prosecuting attorney, in seeking to prove that defendant had been convicted of a felony, asked questions of defendant revealing to the jury the name of the felony of which and the *alias* under which the defendant had been previously convicted, the identity of the court wherein the conviction was had and the name of the judge presiding, did not constitute error.

**[2] ID.—IMPEACHMENT — NUMBER AND NAMES OF FELONIES MAY BE SHOWN.**—A witness may be impeached by showing "by the ex-

---

2. Impeaching witness by proof of conviction of crime, notes, 73 **Am. Dec.** 775; 40 **Am. St. Rep.** 791; 41 **L. R. A. (N. S.)** 877. See, also, 27 **Cal. Jur.** 144; 28 **R. C. L.** 624.

amination of the witness, or the record of the judgment, that he had been convicted of a felony," and the number as well as the names of the felonies may be shown.

[3] ID.—RETENTION OF MONEY IN CONNECTION WITH ANOTHER CRIME— REMARK OF WITNESS — ABSENCE OF PREJUDICE.—In such prosecution, while the voluntary remark of a witness (a police officer) that a sum of money found on defendant's person was being held in connection with another crime was not pertinent to the case, it was not chargeable to the trial court or prosecution, where it was brought out while the witness was under examination by defendant's counsel; and, moreover, in view of the prompt action of the court in striking it from the record, first at defendant's request and again of its own motion, which was followed by the court's statement to the effect that the members of the jury knew what they were trying, it cannot reasonably be said that the remark influenced the jury in arriving at its verdict, the evidence against defendant being otherwise convincing.

---

(1) 9 C. J., p. 1076, n. 18.   (2) 17 C. J., p. 312, n. 44; 40 Cyc., p. 2622. n. 60, p. 2624, n. 71, p. 2640, n. 86.   (3) 17 C. J., p. 325, n. 72.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Roy L. Daily for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant herein was convicted of burglary in the second degree and has appealed from the judgment of conviction and from the order denying his motion for a new trial.

Shortly after 4 o'clock on the morning of February 14, 1926, one Mike Britwin, occupying an apartment in an apartment house on Eighth Street, San Francisco, was awakened and observed a man, whom he identified as appellant, passing through the doorway between his bedroom and the dining-room. He arose immediately and followed the intruder into the hall, but the latter disap-

peared at the entrance to the back stairway leading to the upper and lower floors. Britwin then returned to his room and ascertained that $9.75 in silver and a keepsake twenty-five cent piece coined in the year 1876 had been stolen from the top of his bureau. A suit of clothes was also taken from the room. He further discovered that his keys, which he had thoughtlessly left on the outer side of the door of his apartment leading to the hallway, were missing. He then returned to the hallway and after trying to arouse the landlady by ringing her door-bell, proceeded to the upper floor of the apartment house, where he found appellant. He grappled with him, both rolling down the back stairs to the floor on which the burglary was committed. The landlady, hearing the noise, came into the hall and asked the cause of the trouble. Britwin, still holding on to the appellant, who was struggling to get away, replied that he had caught a burglar and requested her to call the police. Upon arrival of the officers, Britwin minutely described the property stolen from his room. Thereupon appellant was searched and the keys and money, including the twenty-five cent piece, were found on his person. The suit of clothes had been dropped in the hall. Appellant at the time was not wearing coat, vest or shoes, and in response to inquiries made by the officers as to what he was doing in the house partly undressed, stated first that he had been visiting a friend in the house, but he was unable to give the location of his friend's room. Finally he said that he had left his clothing and shoes in the lot back of the apartment house, to which he had gained entrance by scaling the fence in the rear and coming up the back stairs. The clothes and shoes were thereupon found by the officers where appellant said he had left them. Appellant at the time was either under the influence of liquor, or pretending to be, as one of the officers testified. Later, at the police station, $53 in currency was found secreted upon appellant's person. It is apparent, without discussion, that the evidence above narrated is amply sufficient to sustain the conviction.

At the trial appellant was called as a witness in his own behalf and not being well versed in the English language gave his testimony with the aid of an interpreter. On cross-examination the first question put to him was:

"Have you been convicted of a felony in this city and county, burglary, in 1917?" Objection was made by appellant's counsel to the use of the word "burglary," and the court ordered it stricken out. The question, as amended, was then repeated and objection was made to the phrase "in this city and county" contained in the question. The objection was sustained and thereupon the district attorney put the following question: "Have you been convicted of a felony?" to which appellant answered "No." As a matter of fact, appellant had been convicted of a felony, as the subsequent proceedings disclosed, and consequently the district attorney, evidently believing that on account of appellant's lack of knowledge of the English language he did not comprehend the meaning of the question, asked appellant, "Do you know what I mean by a felony?" Appellant answered: "I don't understand," and the interpreter added to the answer: "He wants to know what it means; shall I tell him the meaning of felony?" The court would not allow this to be done, but stated: "Why not ask him this: If he says he does not understand what a felony is, ask him if he was not convicted of an offense and as a punishment therefor was confined in the state prison. That is a legal definition of felony." At the same time the court, at the request of appellant's counsel, admonished the jury as follows: "The jury may as well understand that any witness who is called by either party may be asked that question, whether or not he has been convicted of a felony. That is to be taken by you as no proof whatsoever as to whether or not this specific offense was committed. It simply goes to the credibility of the witness. The law sets out that a witness may be impeached, that is that his credit as a witness, the credit which is extended to every witness and the presumption that they speak the truth, may be attacked by showing that the witness, whether he is the defendant or anyone else, has been convicted of a felony, and if it is proven that any witness has been convicted of a felony you have a right to consider that fact in determining whether or not you will believe him. He can answer that question, however." The question suggested by the court, as to whether appellant had ever been convicted of a crime and punished by being imprisoned in San Quentin in

this state, was then propounded and appellant replied: "I don't know. I was there, but I don't know for what." The district attorney then started to ask another question as follows: "Was that in the year—" but did not complete the question owing to an objection by appellant's counsel "to any more questions along this line," stating "he has testified that he has been in San Quentin," to which the court aptly replied: "He has so testified, but he may have been over there as a guest." After a brief discussion the district attorney then put the following question: "Isn't it a fact that you were convicted of burglary in Department 11 of the Superior Court in this City and County in 1917 and sentenced to San Quentin upon that charge under the name of Joe Gravi or Joseph Grabbi?" Appellant's counsel renewed his objections to the question, stating: "Counsel is taking the wrong line of proving the point. He is asking the witness if he has been sentenced to San Quentin and has explained what a felony is and then the man answered it, and they cannot go into the matter of the prior conviction. That has nothing to do with it." The following proceedings thereupon followed: "The Court: Ask him if he knows why he was in San Quentin, what he was doing over there. A. I was in San Quentin, but at that time I did not understand very well the English language and they put me there and I did not know why. The Court: Well, that of course is not an admission of a conviction of felony. Mr. Hagerty (Deputy District Attorney): The only thing, I presume, is to get the record. The Court: Surely. Mr. Hagerty: However, I think we are entitled from this witness a positive answer as to whether or not he has been convicted of a felony, and sentenced to San Quentin. The Court: Just put the question to him in the statutory form: Have you ever been convicted of a felony? A. Yes. Mr. Hagerty: Q. In Judge Louderback's court? The Court: It does not make any difference what for, He says he has been convicted of a felony. Mr. Daily (Counsel for Appellant): He said yes. Mr. Hagerty: That is all. . . . "

[1] Appellant contends that the course adopted by the district attorney in seeking to prove that appellant had been convicted of a felony amounted to prejudicial error,

the transgression consisting, as appellant claims, in revealing to the jury the name of the felony of which and the *alias* under which appellant had been previously convicted, the identity of the court wherein the conviction was had and the name of the judge presiding. We find no merit in the point.

[2] A witness may be impeached by showing "by the examination of the witness, or the record of the judgment, that he had been convicted of a felony" (Code Civ. Proc., sec. 2051), and the number as well as the names of the felonies may be shown. (*People* v. *Eldridge*, 147 Cal. 782 [82 Pac. 442]; *People* v. *Chin Hane*, 108 Cal. 597 [41 Pac. 697]; *People* v. *Putnam*, 129 Cal. 258 [61 Pac. 961]; *People* v. *Fouts*, 61 Cal. App. 242 [214 Pac. 657]; *People* v. *Craig*, 196 Cal. 19 [235 Pac. 721].) In *People* v. *Craig, supra,* it was said: "The usual manner of making proof of a prior conviction is to ask the witness who has suffered such a conviction if he had been so convicted, to produce a copy of the judgment of conviction; or if he answers in the affirmative he may then be asked of what specific crime he was convicted" (citing cases). Therefore, in the instant case, appellant having first made positive denial of the previous conviction and afterward having answered equivocally in reference thereto, the district attorney might well have abandoned further oral examination of the witness and introduced in evidence the record of conviction; and if he had done so, the terms of said record of conviction would have revealed the same and even more information than that which was attempted to be elicited on oral examination, and about which appellant is complaining. We therefore believe that the questions propounded by the district attorney were not violative of the rule. There is nothing in *People* v. *Chin Hane, 'supra,* which conflicts with our conclusion herein. It was there said: "The details and circumstances comprising the offense should not be gone into. But, in view of the statute, section 2051 of the Code of Civil Procedure, which allows the proof of the fact to be made either by the evidence of the witness himself or by the record of conviction, it would appear that not only the fact of the conviction could be shown, but the name of the particular felony of which the witness had been convicted. Beyond this

the examination should not go." The last sentence of the above quotation, upon which appellant strongly relies in support of his contention, manifestly means that regarding "the details and circumstances comprising the offense" the examination should not go beyond proving the name of the felony of which the witness had been convicted. The identity of the court, the name of the judge presiding, and the name of the defendant, as they are embodied in the terms of the judgment cannot be considered as any part of "the details and circumstances comprising the offense," and to exclude from evidence those essential ingredients of the judgment, when the record of the judgment is received in evidence, would be to seriously affect the purpose for which the record of the judgment may be offered.

[3] Error is also assigned because of a voluntary statement made by Police Officer William F. Gleeson while testifying as a witness at the trial for the People. He was one of the three officers that arrested and searched appellant at the apartment house, and in response to questions asked by Mr. Daily, counsel for appellant, testified on cross-examination that the $53 in currency found on the person of appellant at the prison by Officer Jackson had not been identified by the complaining witness in this case as his money. The following then occurred: "Q. (By Mr. Daily): Has that (the $53 in currency) any connection with the crime, that you know of A. No, but it has with another one. Mr. Daily: We ask that that be stricken out of the record. The Court: It goes out. Mr. Daily: We make a motion for the return of the money not used in connection with the crime. The Court: We will not go into that at this time. It has nothing to do with this crime. The Witness: Your Honor, I would like to make a statement. This money is held as evidence in another case. The Court: No, let that go out. Mr. Daily: And we ask that the jury be admonished," to which the court replied that the members of the jury would be admonished, indicating, however, that such admonition was probably unnecessary because "they know what we are trying here." While the voluntary remark of the witness was not pertinent to the case, it was brought out while the witness was under examination by appellant's counsel, and

consequently is not chargeable to the trial court or the prosecution; and, moreover, in view of the prompt action of the court in striking it from the record, first at appellant's request and again of its own motion, which was followed by the court's statement to the effect that the members of the jury knew what they were trying, it cannot reasonably be said that the remark influenced the jury in arriving at its verdict, the evidence against appellant being otherwise convincing.

The judgment and order are affirmed.

Tyler, P. J., and Cashin, J., concurred.