NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LOREN ROBERT ALLEN, *Appellant.*

No. 1 CA-CR 17-0752
FILED 7-26-18

Appeal from the Superior Court in Yavapai County
No. P1300CR201600848
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

S W A N N, Judge:

¶1        Loren Robert Allen appeals his convictions and sentences for three counts of aggravated assault against a peace officer.  He contends that the state failed to present sufficient evidence to support the convictions, and that the superior court therefore erred by denying his motion for judgment of acquittal under Ariz. R. Crim. P. ("Rule") 20.  Upon review of the record, we find minimally sufficient evidence to support Allen's convictions.  We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Late one night in June 2016, Yavapai County Sheriff's Deputies Barton, Lewis, and Perry responded to a 911 call about a "weapons offense" involving Allen at a camping area outside Prescott.  The deputies parked and began walking in the dark toward Allen's campsite, hearing "loud cracks" and "yelling and screaming."  When the deputies were about 50 feet from Allen, Deputy Barton illuminated Allen with his flashlight and announced that he was with the Sheriff's Office.  Allen was by his parked car holding a five-foot walking stick like a baseball bat.

¶3        As the deputies continued walking toward Allen, Deputy Barton ordered Allen to drop his stick, but—clearly agitated—Allen instead took a few steps toward the deputies while yelling and aggressively swinging the stick.  In response to Allen's apparent use of the stick as a weapon, Deputy Barton drew his handgun and Deputy Perry drew his taser.  Deputy Lewis was already holding an unchambered shotgun and a taser.  As the deputies advanced closer toward Allen, repeatedly ordering him to drop the stick, Allen began retreating toward his car and moved his stick from a "baseball grip" to an "across-his-chest grip."  Allen yelled at the deputies to "get away from me, get the fuck away," and moved his stick back and forth between the baseball and across-the-chest grips, occasionally swinging it wildly.  The deputies gave him constant commands to drop the stick.  Allen continued to retreat, at one point taking a position on the other side of his car from Deputy Barton, but Deputy Barton continued around the car until he was within ten feet of Allen.  Meanwhile, Deputies Perry

and Lewis approached Allen from Deputy Barton's left—Deputy Perry was about fifteen feet away with his taser, and Deputy Lewis was about ten feet away with his shotgun and taser.

¶4            Allen held onto the stick and took a defensive position, facing the deputies.  Believing that Allen did not see him because he was focused on Deputy Barton, Deputy Lewis stepped forward and deployed his taser, striking Allen.  Allen immediately dropped his stick and fell to the ground.  After a short struggle, the deputies arrested him.  From the time that Deputy Barton first illuminated Allen with his flashlight to the time that Deputy Lewis tased Allen, approximately 45 seconds had elapsed.

¶5            The state charged Allen with three counts of aggravated assault on a peace officer (class 5 felonies) and one count of resisting arrest (a class 1 misdemeanor), and the matter proceeded to a jury trial.  After the close of the state's case, upon Allen's motion, the court entered a judgment of acquittal as to the resisting arrest charge based on insufficient evidence, but permitted the three counts of aggravated assault to go to the jury.  The jury then found Allen guilty of all three counts of aggravated assault, and the court sentenced him to three concurrent terms of four years' imprisonment.  Allen timely appeals.

## DISCUSSION

¶6            Allen challenges the superior court's denial of his Rule 20 motion for judgment of acquittal, arguing there was insufficient evidence to support his convictions.  We review the sufficiency of the evidence de novo.  *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  We view the evidence in the light most favorable to sustaining the verdict.  *State v. Girdler*, 138 Ariz. 482, 488 (1983).

¶7            We must affirm a conviction if "substantial evidence" supports the jury's verdict.  *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007); Rule 20(a).  "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)).  Although "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," *West*, 226 Ariz. at 563, ¶ 17 (citation omitted), such a circumstance arises only when "there is a complete absence of probative facts to support the conviction," *State v. Scott*, 113 Ariz. 423, 424–25 (1976).  "To set aside a jury verdict for insufficient evidence it must clearly appear

that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987).

**¶8**         A person commits assault by "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury." A.R.S. § 13-1203(A)(2). Simple assault is elevated to aggravated assault if the person knows that the victim is a peace officer. A.R.S. § 13-1204(A)(8)(a). Both direct and circumstantial evidence may be used to prove the defendant's intent and the victim's apprehension. *State v. Wood*, 180 Ariz. 53, 66 (1994) ("There is no requirement that the victim testify to actual fright."); *see also State v. Taylor*, 25 Ariz. App. 497, 499 (1976). Peace officers are not immune from the fear that anyone would reasonably feel in the same circumstances. *Wood*, 180 Ariz. at 66.

**¶9**         Contrary to Allen's contention, the state offered sufficient evidence to allow a reasonable jury to find that Allen intentionally placed all three officers in fear of imminent injury. In other words, the state's evidence was sufficient to require the superior court to send the fact issue to a jury. *See* Rule 20(a); *see also West*, 226 Ariz. at 562, ¶ 16.

**¶10**         The jury could have reasonably inferred from the evidence that Allen intended his conduct to result in the deputies' apprehension of imminent physical injury under § 13-1203(A)(2) because Allen yelled and swung his stick in the direction of the deputies. Although the evidence suggests that Allen did not see Deputy Lewis—in fact, Deputy Lewis conceded he did not believe that Allen saw him even as he approached Allen to tase him—a defendant's intent to frighten one person is sufficient to fulfill the element of intent as to each person who is actually frightened as a result of the defendant's conduct. A.R.S. § 13-203(B)(1); *State v. Johnson*, 205 Ariz. 413, 419, ¶¶ 19–21 (App. 2003) (applying transferred intent under § 13-203(B)(1) to reasonable apprehension assault under § 13-1203(A)(2)). Here, Allen's conduct showed not only an intent to frighten Deputies Barton and Perry specifically, but to frighten any peace officer who was approaching him. Therefore, even if Allen was not immediately aware of Deputy Lewis's presence, there was nevertheless an adequate basis to fulfill the intent element of assault as to Deputy Lewis, who approached Allen along with Deputies Barton and Perry.

**¶11**         In determining the reasonableness of the deputies' apprehension of imminent physical injury, we consider their interaction with Allen as a whole. *See State v. Burton*, 144 Ariz. 248, 253 (1985). Here, we focus on two temporally discrete, and legally significant, moments

during the interaction—Allen's combative demeanor when the deputies were a substantial distance away and Allen's more defensive behavior as the deputies were within striking distance. Considered together, these two phases of the interaction show that a reasonable jury could have found that the deputies apprehended imminent harm, despite the fact that many juries might not have so found. If this threshold is met, it is not our role to second-guess the actual trial jury.

¶12 In the first significant moment, shortly after Deputy Barton shined his light on Allen, Allen stepped toward the deputies, yelling and aggressively swinging his five-foot walking stick. Although this aggressive behavior could have given the deputies reason to fear physical injury, Allen was still approximately 40 feet away and any possible physical injury was not yet imminent. The risk of imminent physical injury arguably became real 30 seconds later, when Allen stopped, reared back, and faced the deputies, who were then ten or fifteen feet away—possibly close enough to be struck by Allen's stick should he lunge towards them. By this time, however, Allen's demeanor had become more defensive. In the 30 seconds between these two moments, Allen had been retreating from the deputies, holding the stick in a less aggressive manner, and yelling at them to leave him alone—a defensive posture that would not reasonably cause apprehension. Still, we do not review any single part of an interaction in isolation. *See Burton*, 144 Ariz. at 253.

¶13 Viewed together, these two discrete moments, along with Allen's yelling and refusal to drop his stick over the course of the event, provided a basis for the jury to find that the deputies had a sustained awareness of Allen's potential for intense aggression once they were close enough to be injured. *See Wood*, 180 Ariz. at 66 (considering facts contributing to officer victims' reasonable apprehension even though those facts occurred before injury was imminent). Allen's initial aggression, his volatility, and his continued lack of cooperation therefore provided the deputies a continuing basis to fear physical injury, and that basis continued until Allen was subdued by Deputy Lewis's taser. Accordingly, viewing the evidence in a light most favorable to the state, we find minimally sufficient evidence to support Allen's three aggravated assault convictions. *See Mathers*, 165 Ariz. at 66.

**CONCLUSION**

¶14        Allen's convictions and sentences are affirmed.

